UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6294-CR-HURLEY

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MACINTAUCH ELIACIN,

    Defendant.
_____/



## OBJECTIONS TO PRESENTENCE REPORT

The defendant, Macintauch Eliacin, through counsel, hereby files the following objections to the presentence report, and in support says:

### I. The Two Levels Added For The Co-Defendant's Possession Of A Stun Gun Was Error: Paragraph 26.

Section 2D1.1(b)(1) provides a two level enhancement if a dangerous weapon (including a firearm) was possessed. Application Note 3 to §2D1.1 provides that the adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.

In this case, a "stun gun" was found on a dresser in the co-defendant's bedroom. A "stun gun" is a dangerous weapon as defined in §1B1(d) -- an instrument capable of inflicting death or serious bodily injury.

Yet, in order for a §2D1.1(b)(1) firearms enhancement for co-conspirator possession to be applied to the defendant the government must prove the following:

    (1) the possessor of the firearm was a co-conspirator;



(2) the possession was in furtherance of the conspiracy;
(3) the defendant was a member of the conspiracy at the time of the possession **and**;
(4) the co-conspirator's possession was reasonably foreseeable by the defendant.

*United States v. Gallo,* 195 F.3d 1278 (11th Cir. 1999).

In this case, while the possessor of the firearm (stun gun) was co-conspirator Eric Taylor, and the defendant was a member of the conspiracy at the time of the possession, there is no proof that the possession was in furtherance of the conspiracy or that Eric Taylor's possession of a stun gun was reasonably foreseeable by the defendant.

Importantly, at no time during any of these six buys, all of which were videotaped and audiotaped, did anyone see the stun gun. There was no reference to the gun on the tapes, nor did the informant ever report seeing the stun gun. On at least one occasion, September 27, 2000, the informant was in the Eric Taylor's bedroom and saw no stun gun. Moreover, at no time during the numerous times the informant previously purchased drugs from the occupants of the house did she report seeing a stun gun.

The stun gun was located in a search of Eric Taylor's bedroom on October 12, 2000, during his arrest. This was a three bedroom house. In addition to the room shared by Taylor and his girlfriend and co-defendant Feline Joseph, Eliacin lived in one room, and a juvenile, Patrick Celange, lived in the third room. It was not until October 17, 2000, that there was any mention of the stun gun. Certainly, the officer who sent the informant into the house on so many occasions would have taken additional precautions if a dangerous weapon was involved.

In *United States v. Gallo,* 195 F.3d 1278 (11th Cir. 1999), the defendant participated in a cocaine transaction involving seven kilograms at a co-defendant's apartment. During that time, two other co-defendants arrived, each armed with a pistol tucked in his waistband. At her sentencing, the defendant received a two-level enhancement pursuant to §2D1.1(b)(1) for her co-defendants'

2

possession of firearms during the course of the conspiracy. In vacating her sentence, the Eleventh Circuit ruled that such enhancement required a finding by the district court that the firearms possession by Gallo's co-conspirators was reasonably foreseeable to Gallo. 195 F.3d at 1284.

Here, not only is there no proof that the possession of the stun gun was in furtherance of the conspiracy, there is no proof that it was reasonably foreseeable to Eliacin. As such, the two-level enhancement should be vacated.

## II. The Defendant Clearly Qualifies For The Safety Valve Of §5C1.2 And A Further Two Level Reduction Is Warranted.

Section 2D1.1(b)(6) provides that if the defendant meets the criteria set forth in subdivision (1) through (5) of §5C1.2, the offense level should be decreased by two levels. Those criteria are:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. §848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

The defendant has no criminal history points and meets all of the other requirements of §5C1.2. The probation officer has erroneously awarded the defendant a two-level enhancement for

3

his co-defendant's possession of a stun gun. For that reason, the probation officer again erroneously finds that the defendant does not qualify for the safety valve, apparently because he:

> (2) . . . possess[ed] a firearm or other dangerous weapon (or induce[d] another participant to do so). . .

Yet, even if the court finds that the two-level enhancement pursuant to §2D1.1(b)(1) was proper, such enhancement does not disqualify the defendant from receiving the safety valve. *United States v. Clavijo,* 165 F.3d 1341 (11th Cir. 1999) ("possession" of firearm, such as would preclude safety valve relief does **not** include reasonably foreseeable possession of firearm by co-conspirator, even though mere possession of firearm by co-defendant may trigger two-level adjustment in base offense level).

In *Clavijo*, the defendant received a two-level enhancement in his offense level because a shotgun -- belonging to a co-defendant -- was found in one of the marijuana grow houses he worked in. In holding that Clavijo was still entitled to safety-valve relief even though his co-defendant possessed a firearm, the Eleventh Circuit found:

> . . .Two reasons compel our conclusion that "possession" of a firearm does not include reasonably foreseeable possession of a firearm by co-conspirators. First, the commentary to the pertinent section adds that "[c]onsistent with §1B1.3 (Relevant Conduct), the term 'defendant,' as used in subdivision (2), limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. §5C1.2, comment. (n.4). This commentary, which tracks the language of section 1B1.3(a)(1)(A), implicitly **rejects** the language of section 1B1.3(a)(1)(B) which holds defendants responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." It is this "reasonably foreseeable" language that allows a defendant to be held responsible for a firearm under section 2D1.1(b)(1) even when he physically possessed no firearm.
>
> Second, the plain language of section 5C1.2 requires that the defendant "possess a firearm . . . or induce another participant to do

4

so. . . ." If "possession" in section 5C1.2 encompassed constructive possession by a co-defendant, then "induce another participant to [possess]" would be unnecessary. **Mere possession by a co-defendant, therefore, while sufficient to trigger section 2D1.1(b)(1), is insufficient to knock a defendant out of the safety-valve protection of section 5C1.2.**[1]

For the purposes of §5C1.2, then, Eliacin neither possessed a weapon nor induced another participant to do so. The defendant therefore qualifies for the safety valve.

### III. A Minor Role Reduction Should Have Been Given: Paragraphs 20 and 28.

Section 3B1.2 provides a two-level reduction in a defendant's offense level where he was a "minor participant" in any criminal activity. Application Note 3 to §3B1.2 states that a minor role participant is any participant who is less culpable than most other participants, but whose role could not be described as minimal.

The probation officer is wrong in believing that the defendant is "equally culpable" with co-defendant Eric Taylor. Not only did Taylor distribute twice as much drugs as the defendant (113.94 grams vs. 68.16 grams), the following were found in Taylor's bedroom:

1. $37 and two bags of crack cocaine weighing 11 grams (chest);
2. 31 grams of crack cocaine in yellow fish food container (top of dresser);
3. Stun gun (top of dresser);
4. 22 grams of crack cocaine (VHS recorder);
5. $265 from black suit coat;
6. $1,850 from blue polo shirt;
7. $1,000 from multi-colored shirt; and
8. $900 from yellow shirt.

Nothing was found in the defendant's bedroom.

---

[1] As noted by the Eleventh Circuit, the Fourth, Fifth, and District of Columbia Circuits have all concluded that a defendant is not precluded from safety-valve relief merely because a co-defendant possessed a weapon. *See United States v. Wilson,* 114 F.3d 429, 432 (4th Cir. 1997); *In re Sealed Case* (Sentencing Guidelines' "Safety Valve"), 105 F.3d 1460, 1462-63 (D.C. Cir. 1997); *United States v. Wilson,* 105 F.3d 219, 222 (5th Cir. 1997).

While Eliacin's role certainly could not be described as minimal, he was less culpable than Taylor, and as such, a two-level minor role reduction should have been granted.

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

_____
Lori Barrist
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 374504
400 Australian Avenue, Suite 300
West Palm Beach, FL 33401
(561) 833-6288 - Telephone
(561) 833-0368 - Fax

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was mailed this 26th day of April, 2001, to Bruce Brown, Assistant United States Attorney, 500 East Broward Boulevard, 7th Floor, Fort Lauderdale, Florida 33301; Scott Kirsche, United States Probation Officer, 501 South Flagler Drive, Suite 400, West Palm Beach, Florida 33401-5912; and to Eliacin Macintauch, Pouch 2087, Cell S4A, Palm Beach County Jail, P. O. Box 24716, West Palm Beach, FL 33416.

_____
Lori Barrist